## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | | |
|---|---|---|
| adidas AG | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cancellation No. 92053314 |
| | ) | |
| Christian Faith Fellowship Church | ) | |
| | ) | |
| Respondent. | ) | |

**RECEIVED**

NOV 0 9 2015

United States Court of Appeals
For The Federal Circuit

### NOTICE OF APPEAL

Notice is given to the Director of the United States Patent and Trademark Office that

Respondent Christian Faith Fellowship Church hereby appeals to the United States Court of

Appeals for the Federal Circuit from the Opinion and Order of the Trademark Trial and Appeal

Board of the United States Patent and Trademark Office, mailed September 14, 2015, in

Cancellation No. 92053314 for Registration Nos. 3,173,207 and 3,173,208.  A copy of the

Opinion and Order is attached.

Dated:  October 29, 2015

/s/ Richard W. Young
Richard W. Young
richard.young@quarles.com
QUARLES & BRADY LLP
300 North LaSalle Street
Suite 4000
Chicago, Illinois 60654
(312) 715-5000
*Counsel for Respondent*
*Christian Faith Fellowship Church*

1

## CERTIFICATE OF SERVICE

I certify that on October 29, 2015, I served a true and correct copy of Respondent's Notice of Appeal by First Class Mail on:

Angelo Notaro
John Zaccaria
Notaro, Michalos & Zaccharia P.C.
100 Dutch Hill Road
Orangeburg, New York 10962
*Counsel for Petitioner*
*adidas AG*

Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA 22313-1451

/s/ Richard W. Young
Richard W. Young
*Counsel for Respondent*
*Christian Faith Fellowship Church*

2

> This Opinion is not a
> Precedent of the TTAB

Mailed: September 14, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

Trademark Trial and Appeal Board

*adidas AG*
*v.*
*Christian Faith Fellowship Church*

Cancellation No. 92053314

Angelo Notaro, John Zaccaria and Bradley S. Corsello of Notaro, Michalos &
Zaccaria, P.C.,
    for adidas AG.

Richard W. Young and John E. Conour of Quarles & Brady LLP,
    for Christian Faith Fellowship Church.

Before Seeherman, Taylor and Greenbaum,
    Administrative Trademark Judges.

Opinion by Greenbaum, Administrative Trademark Judge:

adidas AG ("Petitioner") filed a petition for cancellation of two registrations

owned by Christian Faith Fellowship Church ("Respondent") for the marks ADD A

Cancellation No. 92053314

ZERO (in standard characters) and  for, as amended, "clothing, namely, shirts and caps."[1]

The grounds for cancellation are (1) nonuse prior to the filing dates of Respondent's use-based applications, rendering the registrations void ab initio; (2) abandonment of Respondent's registrations based on at least three consecutive years of nonuse with intent not to resume such use; and (3) failure of the marks to function as trademarks because ADD A ZERO is simply an informational slogan.[2]

Respondent, in its answer to the petition, admitted that Petitioner's application, Serial No. 77822018 for the mark ADIZERO, has been refused registration under Section 2(d) based on Respondent's registrations, and that Respondent never used the marks on pants,[3] and denied the remaining salient allegations in the petition.

Both parties filed briefs, and Petitioner file a reply brief.

For the reasons discussed below, we sustain the petition for cancellation on nonuse grounds. Accordingly, we need not and do not address Petitioner's claims of

---

[1] Registration Nos. 3173207 and 3173208, respectively, both issued on November 21, 2006. Respondent filed applications for the former on March 23, 2005, and the latter on March 24, 2005.

[2] The petition for cancellation also includes a claim that Respondent's marks are "ornamental and/or functional" (Pet. ¶¶ 24, 26, 11 TTABVUE 4), but Petitioner did not pursue this claim in its briefs. The claim, therefore, is deemed to be waived. *Krause v. Krause Publications Inc.*, 76 USPQ2d 1904, 1906 n.2 (TTAB 2005). We also note that the petition for cancellation originally included a claim for partial cancellation of the registrations pursuant to Section 18 of the Trademark Act, 15 U.S.C. § 1068. On February 3, 2014, the Board granted Petitioner's motion to withdraw said claim, and dismissed the claim with prejudice. 46 TTABVUE 1.

[3] The registrations originally included "pants" in the identification of goods, but these goods were deleted from the registrations with preclusive effect. *See* May 22, 2013 Board Order. 31 TTABVUE 6-7, 9.

abandonment or failure to function as trademarks, and we limit our discussion of the evidence, and any evidentiary objections, to Petitioner's claim of nonuse.

I.    Evidentiary Issues

A. Petitioner's Motion to Strike Portions of Discovery Depositions

With its notices of reliance, Petitioner submitted portions of the discovery depositions of Respondent's Fed. R. Civ. P. 30(b)(6) designated witnesses, Craig Mason, Respondent's secretary, treasurer and executive pastor, and Edward Logan, Respondent's president and senior pastor.[4] Respondent submitted a notice of reliance pursuant to Trademark Rule 2.120(j)(4) on additional portions, with exhibits, of the Mason and Logan discovery depositions.[5] Petitioner previously moved to strike Respondent's notice of reliance. However, the Board deferred consideration of the motion until final hearing insofar as the motion relates to the additional portions from the Mason and Logan discovery depositions.[6] Along with its brief, Petitioner filed separate evidentiary objections which include a continuing

---

[4] 36 TTABVUE 336-526 (Petitioner's Ninth Notice of Reliance, portions of Mason Discovery Deposition with exhibits) and 36 TTABVUE 527-578 (Petitioner's Tenth Notice of Reliance, portions of Logan Discovery Deposition with exhibits).

[5] 57 TTABVUE, originally submitted as 49 TTABVUE. Respondent seeks to introduce eight additional portions from the Mason deposition with exhibits (57 TTABVUE 2-78), four additional portions from the Logan deposition (57 TTABVUE 79-85), and Respondent's Trial Exhibit No. 13 (57 TTABVUE 86-94).

[6] 56 TTABVUE. The Board also granted the motion to strike Respondent's Trial Exhibit No. 13 (originally submitted as 49 TTABVUE 86-94) on procedural grounds, and allowed Respondent time to submit a substitute notice of reliance with respect thereto. Respondent complied. 57 TTABVUE 86-94. Petitioner continues to object to this evidence in its brief (59 TTABVUE 14-15) and in its concurrently filed evidentiary objections (63 TTABVUE). We need not address this objection, however, because this exhibit pertains only to Petitioner's claim of abandonment.

objection to the additional portions from the Mason and Logan discovery depositions as improper rebuttal.[7]

Trademark Rule 2.120(j)(4) provides that if only part of a discovery deposition is made of record by a party, an adverse party may introduce under a notice of reliance any other part of the deposition which should in fairness be considered so as to make not misleading what was offered by the submitting party.

Respondent submitted only one excerpt from each of the discovery depositions in response to the deposition testimony that Petitioner submitted concerning the nonuse claim.[8] The additional testimony submitted by Respondent from the Mason discovery deposition is not outcome determinative. Indeed, in its brief, Respondent does not even mention the additional testimony or the excerpt to which the additional testimony purportedly relates. We therefore need not rule on the portion of the motion to strike directed to the Mason deposition.

Petitioner also submitted an excerpt from Mr. Logan's discovery deposition, in which he states that he does not know whether Respondent shipped any ADD A ZERO merchandise in interstate commerce prior to the filing dates of the applications.[9] Respondent submitted additional testimony from the Logan discovery deposition in which Mr. Logan testifies that Respondent has "members that live in Wisconsin, so they've purchased the Add A Zero" … "from the bookstore or maybe

---

[7] 59 TTABVUE 13.

[8] Mason Discov. Dep. 151:2-29, 57 TTABVUE 38 (purportedly to counter Mason Discov. Dep. 148:23-151:1, 36 TTABVUE 440-443), and Logan Discov. Dep. 38:22-39:5, 57 TTABVUE 84-85 (purportedly to counter Logan Discov. Dep. 37:16-38:21, 36 TTABVUE 567-568).

[9] 36 TTABVUE 566-568.

the internet as well. I don't know for sure."[10] We do not consider the additional excerpts necessary to make the initial excerpt submitted by Petitioner "not misleading," as they do not show that there were any such shipments, or provide an explanation as to why there were not. *See Swatch AG (Swatch SA) (Swatch Ltd.) v. M.Z. Berger & Co.*, 108 USPQ2d 1463, 1466 (sustaining objection to additional testimony because it did not "clarify or correct the testimony offered by opposer"), *aff'd, M.Z. Berger & Co. v. Swatch AG*, 114 USPQ2d 1892 (Fed. Cir. 2015). To the extent the testimony pertains to sales from the on-line bookstore, it is undisputed that Respondent launched its on-line bookstore (and first made ADD A ZERO merchandise available for sale through the on-line bookstore) in December 2010.[11] Accordingly, sales from the on-line bookstore could not have included any shipments of ADD A ZERO merchandise prior to the March 2005 filing dates of the applications. We therefore grant Petitioner's motion to strike the additional excerpts.[12]

B. Objections to Mason Trial Testimony and Exhibits

Respondent's other evidence and testimony pertaining to Petitioner's nonuse claim is limited to Mr. Mason's trial testimony concerning: (1) sales and the availability for sale of ADD A ZERO apparel to out of state church members[13]; (2) a

---

[10] 38-39, 57 TTABVUE 83-84.

[11] Respondent's Answers to Interrogatory Nos. 3 and 7, 36 TTABVUE 286-287, and 36 TTABVUE 436.

[12] We add that consideration of Mr. Logan's excluded testimony would not have affected the outcome herein.

[13] 50 TTABVUE 15-16.

copy of a credit card receipt dated January 30, 2005 signed by Clementina Ekong[14]; and (3) a copy of three personal checks bearing addresses in Wisconsin, including one dated February 23, 2005 (prior to the filing date of Respondent's underlying applications) signed by Charlotte Howard;[15] and associated Exhibit 2, a printout of Respondent's receipt journal for sales of ADD A ZERO merchandise, Exhibit 3, a copy of Ms. Ekong's credit card receipt, and Exhibit 4, a copy of the personal checks.[16]

In the evidentiary objections filed with Petitioner's brief, Petitioner has objected to all of this testimony and to Exhibits 3 and 4 because Mr. Mason "did not testify that he actually observed" any of the sales, or the writing of the checks or the notes on the credit card receipt. As discussed below, Mr. Mason's testimony is based on his own knowledge, and it is relevant to the issue of nonuse. The objections to Mr. Mason's testimony are overruled.

We now turn to Petitioner's objections to Ms. Ekong's credit card receipt and Ms. Howard's personal check.

### 1. Untimely Disclosure

Petitioner contends that neither document is admissible because Respondent produced them on November 22, 2013, after discovery had closed, and indeed, after Petitioner's testimony period had concluded. Petitioner, upon receipt of the

---

[14] 50 TTABVUE 17-20 and 29.

[15] 50 TTABVUE 21-25, 29.

[16] 50 TTABVUE 50-67 at 51-52 (Exhibit 2), 50 TTABVUE 68 (Exhibit 3) and 50 TTABVUE 69 (Exhibit 4). The other two checks in Exhibit 4 also bear Wisconsin addresses, but they post-date the filing date of the applications by approximately five months.

documents from Respondent, previously had objected on this basis.[17] With its response to Petitioner's objections, Respondent submitted a letter dated December 9, 2013 from Respondent's counsel to Petitioner's counsel stating:

> The four pages of documents that the Church produced on [November 22, 2013] were only just located. They were not responsive to any discovery served by adidas. Even so, and because the Church may rely on them in its case, we promptly produced the documents to you. While discovery in the proceeding is closed, the Church may be willing to consent to some additional, limited discovery about these documents. Please let me know what discovery adidas would like to take.[18]

In its response to Petitioner's evidentiary objections, Respondent states that Petitioner never responded to this letter, and Petitioner does not contend otherwise.

When asked why he had not previously produced the documents, Mr. Mason testified that "to my knowledge," they were not requested.[19] Petitioner did not make of record any discovery requests to which these documents would be responsive, nor did Petitioner file a reply brief to clarify this matter. Thus, we cannot say that Respondent is attempting to rely on documents that were requested but not produced in discovery, and for this reason alone we cannot say that the documents were not timely produced. Moreover, as Respondent points out in its response to this objection, Petitioner "had the opportunity four months before Mr. Mason's deposition to take discovery regarding these documents, but chose not to do so."[20]

---

[17] 59 TTABVUE 24-25.

[18] 61 TTABVUE 36.

[19] 50 TTABVUE 25 and 34.

[20] 61 TTABVUE 22.

Petitioner cannot now complain that it was deprived of the opportunity to take discovery regarding the documents. The objection is overruled.

### 2. Hearsay

Petitioner's objection that the documents are inadmissible hearsay is overruled. The documents are admissible as business records pursuant to Fed. R. Ev. 803(6). Mr. Mason testified that the "check copies came from the records that were from bookstore sales" and that he keeps records for all bookstore sales "in my storeroom."[21] Similarly, Mr. Mason testified that he recognized the credit card receipt, and that it is a record that he maintained for the church.[22]

### 3. Lack of Foundation

During his Rule 30(b)(6) discovery deposition, Mr. Mason testified that as executive pastor his duties include "the financial recordkeeping of the church and all the business aspects."[23] Based on this testimony, and the testimony regarding his practice of keeping the bookstore records in the storeroom, we find that Mr. Mason was familiar with the financial records of the bookstore, including the sales receipt and the personal check at issue. We therefore overrule this objection.

### 4. Relevance

Petitioner also objects to the credit card receipt on grounds of relevance because Ms. Ekong resided in Illinois at the time of the sale. The credit card receipt is evidence of a sale of the goods, and therefore is relevant regardless of where Ms.

---

[21] 50 TTABVUE 24.

[22] 50 TTABVUE 17-18.

[23] 36 TTABVUE 352.

Cancellation No. 92053314

Ekong resided on January 30, 2005. The objection is overruled. We discuss below the probative value of the credit card receipt.

## II.    Standing

In the May 22, 2013 Board order, the Board granted partial summary judgment that Petitioner had established its standing.[24]

## III.    Background

Respondent operates a church in Illinois, close to the Wisconsin border.[25] Church members include residents of the states of Illinois and Wisconsin.[26]

In 2004, in connection with a fundraising campaign, Respondent decided to sell shirts and caps bearing the ADD A ZERO marks.[27] Between December 2004 and July 2005, Respondent bought from Icon Industries, a company based in Illinois, "a modest quantity" of shirts and caps embroidered with the ADD A ZERO marks "to sell in the church's bookstore, located in the basement of the church building."[28]

Prior to the commencement of this proceeding, ADD A ZERO shirts and caps were only available for sale in Respondent's bookstore.[29] Respondent produced during discovery a receipt journal itemizing the bookstore's sales of ADD A ZERO

---

[24] 31 TTABVUE 6.

[25] 50 TTABVUE 13.

[26] 50 TTABVUE 13-14.

[27] 36 TTABVUE 417-421, 36 TTABVUE 548-550, and Exh. PX27, 36 TTABVUE 572.

[28] Resp. Br. at 2, 60 TTABVUE 7. 36 TTABVUE 364, 371-374, 379, and Exhs. PX11-14, 36 TTABVUE 466-472.

[29] 36 TTABVUE 390. Although Mr. Mason testified that Respondent now has an online bookstore, as noted above, it began operating after this proceeding commenced. *Id.* at 286-287 and 436.

apparel, which both parties made of record.[30] Mr. Mason explained that the receipt journal lists all sales of ADD A ZERO shirts and caps from January 9, 2005 to July 3, 2011.[31] The receipt journal lists sales of approximately 60 ADD A ZERO caps and approximately 70 ADD A ZERO shirts from January 9, 2005 through March 5, 2005, and no additional sales of caps or shirts prior to the filing dates of the applications later that month.[32] Of these, Respondent particularly points to the sales dated January 30, 2005 in the amount of $51.12 for one ADD A ZERO shirt and one ADD A ZERO cap, and February 23, 2005 in the amount of $38.34 for two ADD A ZERO caps, to counter Petitioner's allegations of nonuse.[33]

Mr. Mason, in his testimony, cross-referenced the January 30, 2005 sale with the credit card receipt from Ms. Ekong, and the February 23, 2005 sale with the personal check from Ms. Howard.[34] There is no record evidence or testimony of any other sales that could support use of the ADD A ZERO marks in commerce prior to the filing dates of the applications.

---

[30] Petitioner made the receipt journal of record with Ninth Notice of Reliance, as Exhibit 7 to the Mason Discov. Dep., 36 TTABVUE 475-492. Respondent also introduced the receipt journal as Exhibit 2 to the Mason Tr. Test., 50 TTABVUE 50-67.

[31] 36 TTABVUE 393-415.

[32] 36 TTABVUE 475-480, 50 TTABVUE 50-55.

[33] 36 TTABVUE 476-477, 50 TTABVUE 51-52. The receipt journal lists other sales of ADD A ZERO merchandise on January 30, 2005 and February 23, 2005 (id.), but there is no testimony or other evidence concerning those sales, and Respondent does not mention them in its brief. We therefore give these other sales no further consideration.

[34] 50 TTABVUE 21-25 and 51-52 (Exhibit 2, receipt journal).

IV.    Applicable Law - Nonuse

Under Section 1(a) of the Trademark Act, a mark may not be registered unless it is "used in commerce." 15 U.S.C. § 1051(a). Section 45 of the Trademark Act defines "use in commerce" as follows:

> The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade ... (1) on goods when -- (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and (B) the goods are sold or transported in commerce. 15 USC 1127.

In addition, "[t]he word 'commerce' means all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1125.

An application filed under Section 1(a) of the Trademark Act is void ab initio where it is found that there was no use of the mark in commerce on the identified goods prior to the filing date of the application.[35] *See Couture v. Playdom, Inc.*, 778 F.3d 1379, 113 USPQ2d 2042, 2043 (Fed. Cir. 2015) ("To apply for registration under Lanham Act § 1(a), a mark must be 'used in commerce.' 15 U.S.C. § 1051(a)(1). ... Use in commerce must be 'as of the application filing date.' 37 CFR § 2.34(a)(1)(i)," and "The registration of a mark that does not meet the use [in commerce] requirement is void ab initio."), *citing Aycock Engineering Inc. v. Airflite Inc.*, 560 F.3d 1350, 90 USPQ2d 1301, 1305 (Fed. Cir. 2009); *ShutEmDown Sports*

---

[35] This statement is true for single class applications such as those underlying the registrations here at issue. We note that in multiple class applications, the failure to make use of the mark on goods in one of the classes will not affect the viability of the other classes.

*Inc. v. Lacy*, 102 USPQ2d 1036, 1045 (TTAB 2012) (nonuse by respondent at the time of filing the underlying use-based application resulted in cancellation of registration).

In the May 22, 2013 Board order denying the parties' cross-motions for summary judgment on nonuse and abandonment, the Board provided the following guidance to the parties:

> "'[C]ommerce' includes intrastate transactions that affect interstate or foreign commerce." *In re Silenus Wines, Inc.*, 557 F.2d 1977, 194 USPQ 261, 266-67 (CCPA 1977). The issue is whether the transactions exert "a substantial economic effect on interstate commerce, and irrespective of whether such effect is what might at some earlier time have been defined as 'direct' or 'indirect.'" *Wickard v. Filburn*, 317 U.S. 111, 125 (1942). *Accord, In re U.S. Home Corporation of Texas*, 201 USPQ 602, 604 (TTAB 1978) ("We fail to perceive that what applicant does has any substantial effect on interstate commerce."). Evidence that the mark has been used in connection with services rendered to customers traveling across state boundaries may be sufficient for the use in commerce requirement. *Larry Harmon Pictures Corp. v. Williams Restaurant Corp.*, 929 F.2d 662, 18 USPQ2d 1292, 1295 (Fed. Cir. 1991); *Pamex Foods, Incorporated v. Clover Club Foods Company*, 201 USPQ 308, 314 n.5 (TTAB 1978).
>
> * * *
>
> ... There are, at a minimum, genuine disputes remaining for trial relating to the impact of [R]espondent's sales of ADD A ZERO clothing in commerce which Congress may regulate ....[36]

Respondent contends that the sales of one shirt and one cap to Ms. Ekong and two caps Ms. Howard, and Respondent's offers to sell the merchandise to out-of-

---

[36] 31 TTABVUE 7-9.

state parishioners, are sufficient to show use in commerce of the marks on the goods prior to the filing dates of the underlying applications.

With respect to the sales transactions, although the evidence shows a sale of one shirt and one cap to Ms. Ekong on January 30, 2005, there is no evidence that this sale was made in interstate commerce, or in commerce that affects interstate commerce. There is simply no testimony or evidence as to where Ms. Ekong was living on January 30, 2005. At most, we have Mr. Mason's testimony that Ms. Ekong lived on the Great Lakes naval base in Illinois at the time of Mr. Mason's testimony in 2014, and that Ms. Ekong previously had been stationed there. Mr. Mason did not know if Ms. Ekong is a resident of Illinois, and he was not asked where she resided on January 30, 2005: "I'm not sure if she's a resident of Illinois. I do know that Ms. Ekong is in the military and that she was a member of the church. For a period of time, she left and has returned last year as she was re – reassigned to Great Lakes naval base."[37] As for the transaction involving Ms. Howard, her check bears an address in Wisconsin. We view this as evidence that she lived in Wisconsin and, combined with Mr. Mason's testimony that Respondent's parishioners live in Wisconsin as well as Illinois,[38] it is sufficient for us to conclude that she crossed state lines when she purchased the two caps in the Church's bookstore in Illinois on February 23, 2005.

---

[37] 50 TTABVUE 19. Further, even if there were evidence that Ms. Ekong was living on the Great Lakes naval base on January 30, 2005, Respondent has cited no statute or case law to the effect that simply because a consumer resides on a military base, a single intrastate sale not occurring on the base to such a person would be deemed a use in interstate commerce.

[38] 50 TTABVUE 13-14.

To be clear, prior to the filing dates of the underlying applications, all sales of shirts and caps were made in person to purchasers physically at Respondent's church bookstore in Illinois. Respondent does not argue that the shipments of shirts and caps from Icon Industries (located in Illinois) to Respondent, for subsequent sale by Respondent in Illinois, affect interstate commerce. *Compare Silenus Wines*, 194 USPQ at 263 (wine imported from France and subsequently sold intrastate constitutes use in commerce). Nor does Respondent argue that any customers, other than Ms. Howard (and possibly Ms. Ekong), came to the bookstore from other states to purchase the goods. Respondent's sole argument, as previously stated, is that the intrastate sales to Ms. Ekong and Ms. Howard, and the ability to sell the goods to out-of-state parishioners who cross state lines to attend the church, have an effect on interstate commerce.

Respondent relies on three cases from our primary reviewing court and its predecessor for the proposition that the marks were used in commerce because out-of-state parishioners crossed state lines to purchase ADD A ZERO apparel.[39] In the first case, *In re Gastown, Inc.*, 326 F.2d 780, 140 USPQ2d 216, 217 (CCPA 1964), the court held that an operator of service stations in Ohio that "provides automotive service and maintenance for customers who are travelling interstate on federal highways in the course of engaging in interstate commerce ... directly affect[s] interstate commerce" because the services include gasoline delivery to "vehicles

---

[39] Although Respondent makes this broad statement in its brief, Respondent does not clearly articulate why Ms. Ekong falls in this category. Nonetheless, the remainder of this decision analyzes both sales for their impact, if any, on interstate commerce.

stalled on highways," which vehicles "[o]bviously ... could not travel at all without the gasoline."

The court extended the *Gastown* rationale to goods in *Silenus Wines*, 194 USPQ2d at 263, and allowed registration of a mark used on wine imported from France because

> were it not for the intrastate sales anticipated by the appellant-importer, the foreign commerce that occurred in this case would probably not have occurred – unquestionably a direct effect. While appellant's importation is not itself a 'use in commerce' by appellant, it is evidence that appellant's sale within Massachusetts was so intimately involved with foreign commerce as to become a 'use in commerce' as defined in the Lanham Act.

*Id.* at 264. The court further held that "intrastate sale of goods, by the party who caused those goods to move in regulatable commerce, directly affects that commerce and is itself regulatable. Clearly, intrastate sale of imported wines by the importer sufficiently affects commerce with foreign nations to qualify those intrastate sales for the Trademark Act definition of 'commerce.'"

Respondent also relies on *Larry Harmon*, 18 USPQ2d at 1295, which held that a single-location restaurant that serves customers traveling across state lines constitutes "use in commerce."

Here, the sales to Ms. Howard and Ms. Ekong were made in the church bookstore in Illinois, and the transfers of goods from Respondent to Ms. Howard and Ms. Ekong occurred at the time of the sales. Although there are situations in which intrastate sales may be found to have such an effect on commerce that may be controlled by Congress that the activities constitute use in commerce, there must be

a showing that the activities have such an effect. *See Silenus Wines*, 194 USPQ at 264. *Compare In re Cook, United, Inc.*, 188 USPQ 284, 287 (TTAB 1975) (applicant who sells a product exclusively within a single state cannot satisfy the "use in commerce" requirement by relying on the fact that purchasers of the product may come from another state and/or transport the product across state lines); *In re The Bagel Factory, Inc.*, 183 USPQ 553, 554 (TTAB 1974) (sales entirely within Michigan cannot support federal registration even when a customer transported the product to Ohio after sale). In this instance, we find that the sale of two ADD A ZERO caps at a minimal cost within the state of Illinois to Ms. Howard, who resides outside the state, does not affect commerce that Congress can regulate such that the transaction would constitute use in commerce for purposes of registration.[40]

To the extent Respondent suggests that simply offering its ADD A ZERO caps and shirts in the bookstore to parishioners who reside out of state prior to the filing dates of the applications, combined with the sales to Ms. Howard and Ms. Ekong (which we have already found insufficient), constitute use of the marks in commerce,[41] Respondent cites no support for this proposition, and we are not aware of any. Section 45 of the Trademark Act does not provide a means to obtain a registration based on use in commerce without making a "bona fide use of the mark in the ordinary course of trade" which, as set forth in Section 45(1)(B), requires

---

[40] We have already found that the testimony regarding Ms. Ekong is not sufficient to show that she could be considered an out-of-state resident at the time the sale was made to her. In any event, the minimal sale to Ms. Ekong of one ADD A ZERO cap and one ADD A ZERO shirt was not sufficient for us to conclude that it affected commerce regulable by Congress or that the combined sales to Ms. Ekong and Ms. Howard had such an effect.

[41] 60 TTABVUE 11-13.

Cancellation No. 92053514

"that the goods are sold or transported in commerce." *Compare Couture v. Playdom*, 113 USPQ2d at 2043-2044 (merely offering a service, without actually providing it, does not constitute use in commerce). Thus, Respondent cannot rely on the fact that its goods *could* have been purchased by people who reside out of state, and Respondent is still left with the sale in Illinois of two caps to a Wisconsin resident as the only evidence of a sale that arguably could affect interstate commerce. This sale is de minimis and, under the circumstances shown here, is insufficient to show use that affects interstate commerce.

We therefore find that Respondent did not make use of its marks on its identified goods in commerce prior to the filing of its use-based applications.

**Decision:** The petition to cancel Respondent's marks ADD A ZERO and  is granted on the ground of nonuse. Registration Nos. 3173207 and 3173208 will be cancelled in due course.



*Quarles & Brady* LLP

300 N. LaSalle Street
Suite 4000
Chicago, Illinois 60654-3406
312.715.5000
Fax 312.715.5155
www.quarles.com

Attorneys at Law in
Chicago
Indianapolis
Madison
Milwaukee
Naples
Phoenix
Scottsdale
Tampa
Tucson
Washington, D.C.

Writer's Direct Dial: 312.715.5260
E-Mail: richard.young@quarles.com

October 29, 2015

**RECEIVED**

NOV 0 9 2015

United States Court of Appeals
For The Federal Circuit

**BY FIRST CLASS MAIL**

Clerk of the Court
United States Court of Appeals
 for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

      RE:   Notice of Appeal, Adidas AG v. Christian Faith Fellowship Church
           Cancellation No. 92053314

Dear Sir:

      Pursuant to Rule 15(a)(1) of the Federal Circuit Rules, please find enclosed three copies
of the Notice of Appeal of Respondent Christian Faith Fellowship Church filed today with the
Trademark Trial and Appeal Board of the United States Patent and Trademark Office.  Also
enclosed is a check for $500 in payment of this Court's filing fee.

Very truly yours,

Richard W. Young

RWY:mas
Enclosure:

cc:    Counsel for Petitioner (by First Class Mail)
        Trademark Trial and Appeal Board (by First Class Mail)

QB\37171697.1



U.S. POSTAGE >> PITNEY BOWES

ZIP 60654
02 1W
0001396194 OCT 29 2015

$ 002.96⁰

## First Class Mail

Quarles & Brady LLP

300 North LaSalle Street
Suite 4000
Chicago, Illinois 60654

CLERK OF THE COURT
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
717 MADISON PLACE NW
WASHINGTON DC 20439